328 So.2d 69 (1976)
J. Clyde DEAN
v.
HERCULES, INCORPORATED.
No. 56644.
Supreme Court of Louisiana.
February 23, 1976.
*70 Paul G. Borron, II, Borron & Delahaye, Plaquemine, for defendant-applicant.
G. William Jarman, Thibaut & Thibaut, John S. Thibaut, Jr., Baton Rouge, for plaintiff-respondent.
DIXON, Justice.
Plaintiff, the owner of a tract of land in Iberville Parish, filed this suit against the owner of an adjoining tract, for damages allegedly suffered as a result of chemical emissions from the defendant's plant which killed or otherwise adversely affected certain trees on his property. In his petition, plaintiff alleges that during the period 1970-1971, the defendant's plant emitted certain chemical substances which destroyed or damaged his trees and orchards. The suit was filed on April 1, 1974. By amended petition, filed on August 21, 1974, the plaintiff asserted a cause of action under article 667 of the Civil Code.
The defendant filed a peremptory exception of prescription of one year, which the trial court upheld. On appeal, the First Circuit reversed, holding that an action for damages under C.C. 667 prescribes in ten years. 314 So.2d 430. We granted writs to resolve the conflict between this case and Gulf Insurance Co. v. Employers Liability Assurance Corp., 170 So.2d 125 (La.App.4th Cir. 1964), which held that the applicable prescriptive period for a suit for damages under article 667 is one year.
The nature of the obligation breached determines the applicable prescriptive period. C.C. 3531. The defendant contends that the obligation breached, if any, arises ex delicto, and therefore prescribes in one year. C.C. 3536. Plaintiff, on the other hand, contends that the obligation *71 gation breached arises solely by operation of the law, and therefore a ten year prescriptive period is applicable. C.C. 3544.
The law recognizes two kinds of civil obligations, in relation to their origin. C.C. 1760. The first are those created by operation of law; the second are those created by the consent of the parties, called conventional obligations.
C.C. 2292 further subdivides obligations contracted without agreement of the parties into two classes:
"Crtain obligations are contracted without any agreement, either on the part of the person bound or of him in whose favor the obligation takes place.
"Some are imposed by the sole authority of the laws, others from an act done by the party obliged, or in his favor.
"The first are such engagements as result from tutorship, curatorship, neighborhood, common property, the acquisition of an inheritance, and other cases of a like nature.
"The obligations, which arise from a fact, personal to him who is bound, or relative to him, result either from quasi contracts, or from offenses and quasi-offenses."
The first class represents those obligations that result from a status or a relationship; the second represents those that result from some act personal to him who is bound.
C.C. 667 provides:
"Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."
This article has been part of our law since the Code of 1808. However, it does not appear in the Code Napoleon. Rather, it appears to have been taken from the text of Domat. Batiza, Sources of 1808 Civil Code, 46 Tul.L.Rev. 4, 69 (1971); Domat, Oeuvres completes de J. Domat, Book 1, Title 12, § 2, No. 8 (ed. Remy 1835).[1]
C.C. 667 is the embodiment of the maxim "sic utere tuo, ut alienum non laedas;" along with articles 668 and 669, it establishes the reciprocal rights and obligations of neighbors. Chaney v. Travelers Insurance Co., 259 La. 1, 249 So.2d 181 (1971). See Yiannopoulos, Civil Responsibility in the Framework of Vicinage: Articles 667-69 and 2315 of the Civil Code, 48 Tul.L.Rev. 195 (1974).
C.C. 488 provides that the right of ownership is exclusive. However, it is not absolute, since it is subject to laws or ordinances. C.C. 491. In effect, C.C. 488 embodies the positive side of the right of ownership (the right by which a thing belongs to some one in particular, to the exclusion of all others), while C.C. 491 embodies the negative side (provided it is not used in any way prohibited by laws or ordinances).
*72 Thus, it is clear that the right of ownership is subject to limitations imposed by law. 2 Aubry et Rau, Droit Civil Francais,§ 194 (7th ed. La.State Law Inst. tr. 1966). Articles 667 and 668 reflect such limitations. C.C. 667 imposes a limitation on the positive side of ownership, for it prevents one landowner from making any work on his property which deprives his neighbor of the liberty of enjoying his own. C.C. 668, on the other hand, imposes a limitation on the negative side, for it forces the neighbor to accept those inconveniences that do not amount to damage.
In prerevolutionary France, such limitations on the right of ownership were regarded as personal obligations founded on the quasi-contract of vicinage.[2] R. R.Pothier, Traite du contract de societe No. 230, 328 4 Oeuvres de Pothier (ed. Bugnet 1861). However, the codification of theSic utere doctrine deals with obligations much broader than the obligations arising from a servitude. Yiannopoulos, Civil Responsibility in the Framework of Vicinage: Articles 667-69 and 2315 of the Civil Code, 48 Tul.L.Rev. 195, 203 (1974). "It is just an historical accident that obligations arising from vicinage have been classified in the Louisiana and French Civil Codes as servitudes arising by operation of law."[3]
Nevertheless, an obligation in Louisiana is either: (1) contractual; (2) quasi-contractual; (3) delictual; (4) quasi-delictual; or (5) legal. C.C. 1760, 2292. The obligations imposed by articles 667 and 668 are legal, for C.C. 666 declares:
"The law imposes upon the proprietors various obligations towards one another, independent of all agreements; and those are the obligations which are prescribed in the following articles."
Therefore, the breach of an obligation imposed by those articles necessarily results in legal responsibility. However, it can be said that the breach of any obligation (be it consensual or nonconsensual) results in legal responsibility if the law provides a sanction for that breach, for, without any sanction, the obligation is merely an imperfect or natural obligation, neither of which can be enforced by any judicial action. C.C. 1757.
After the two basic kinds of civil obligations (consensual and nonconsensual) are established by Title III (article 1760), the Civil Code then treats (1) Of Conventional Obligations (Title IV, articles 1761-2289); (2) Of Quasi Contracts, and Of Offenses and Quasi Offenses (Title V, articles 2292-2324). Therefore, in order to determine the incidents of the breach of a legal obligation, and the applicable prescriptive period in this case, we look to the closest analogous situation provided for in the Code.
An action for damages for a violation of article 667 is most closely associated with an action for damages based on C.C. 2315 et seq. Indeed, it can be said that a violation of article 667 constitutes fault within the meaning of article 2315.[4]Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (1971). [5] In effect, C.C. 667 imposes liability without negligence. Chaney v. Travelers Insurance Co., supra. Therefore, the prescriptive period in an action for damages for a violation of article 667 should be one year.
*73 We are reinforced in this conclusion by the interoperation of C.C. 670 and 2322.[6] Article 670 is a broad statement of the building owner's duty toward his neighbors and passersby. C.C. 2322 provides that the owner of the building is answerable for the damages occasioned by its ruin. Articles 670 and 2322 are laws upon the same subject matter, and hence are construed with reference to each other. C.C. 17; Anslem v. Travelers Insurance Co., 192 So.2d 599 (La.App.3rd Cir. 1966). It has therefore been held that the prescriptive period for an action for damages brought under C.C. 670 and 2322 is one year. Grigsby v. Morgan & Lindsey,148 So. 506 (La.App.2d Cir. 1933). Since C.C. 2315 is broad enough to include the obligations imposed by C.C. 667, and because the acts which would violate the obligations imposed by 667 could so easily be said to be an "act whatever of man that causes damage to another" (see Butler v. Cargill, Inc., 304 So.2d 91 (La.App.1st Cir. 1974), it is entirely logical that the same prescriptive period should apply to both. C.C. 3536, 3537.
Nor can we say that a ten year prescriptive period is applicable because damage to immovable property is involved. See C.C. 3537. C.C. 667 is not limited in its operation to damage to immovable property. Rather, the article specifically provides that the landowner cannot make any work on his estate "which may be the cause of any damage to him"(his neighbor). Article 667 seems to encompass liability for personal injuries. See Rayborn v. Smiley, 253 So.2d 664 (La.App. 1 Cir. 1971), cert. den. 260 La. 105, 255 So.2d 92 (1971). Furthermore, damage to movable property is compensable under C.C. 667. SeeWatkins v. Gulf Refining Co., 206 La. 942,20 So.2d 273 (1944).
Nor will our holding result in the possibility of acquiring any kind of servitude after one year passes without litigation over the breach of the obligation of neighborhood. Servitudes are acquired by ten years prescription. C.C. 765. Moreover, only continuous and apparent servitudes can be acquired by prescription. C.C. 765, 766. Certainly, in cases such as this, involving industrial pollutants, an act of man is required, and, therefore, no servitude can be acquired by the offending landowner by prescription. C.C. 727.
Neither do we express any opinion on the doctrine in the cases involving "continuing damages." (In Rhodes v. International Paper Co., 174 La. 49, 139 So. 755 (1932), it was held that, in the case of continuing damage, prescription was not suspended, but ran as the damage occurred; prescription, therefore, ran on each item of damage from the date it was inflicted.Spyker v. International Paper Co., 173 La. 580, 138 So. 109 (1931). However, while the applicable prescriptive period for an action for damages for a violation of article 667 is one year, the one year period cannot necessarily be reckoned from the date of the occurrence. In modern technology damages from industrial emissions and the like may not become apparent until some years after the occurrence. Additionally, it might be impossible for the injured party to know what or who caused the damage, until an investigation can be made after the damage in fact becomes apparent. In such cases, the prescriptive period would run only from the date the damage becomes apparent. "And where land, timber or property has been injured, cut, damaged or destroyed from the date knowledge of such damage is received by the owner thereof." C.C. 3537.
*74 Support for this conclusion is found not only in prior decisions of this court, but also in decisions of federal courts and the lower state courts. In Young v. International Paper Co., 179 La. 803, 155 So. 231 (1934), which involved damage to plaintiff's timber due to acid water flowing from defendant's mill, this court held that the prescriptive period of one year began to run from the date the owner of the timber acquired knowledge of the damage. InLiles v. Barnhart, 152 La. 419, 93 So. 490 (1922), an action for the wrongful extraction of oil and gas, we held that the prescriptive period began to run from the time knowledge was received of the wrongful extraction of the oil and gas.
In R. J. Reynolds Tobacco Co. v. Hudson, 314 F.2d 776 (C.C.A. 5 1963), which involved damage to plaintiff's lungs from defendant's cigarettes, the court held that, under Louisiana law, prescription does not begin to run until the plaintiff knows or should know he has sustained damage. In Kuchenig v. California Company, 233 F.Supp. 389 (E.D.La.1964), an action for damages for trespass to mineral property, the court noted that prescription begins to run only from the date knowledge of the damage is received by plaintiff. Finally, in Breaux v. Aetna Casualty and Surety Co., 272 F.Supp. 668 (E.D.La.1967), a medical malpractice case, the court held that prescription does not begin to run until the patient discovers or should have discovered his injury.[7]
C.C. 3537 provides:
"The prescription mentioned in the preceding article runs:
"With respect to the merchandise injured or not delivered, from the day of the arrival of the vessel, or that on which she ought to have arrived.
"And in the other cases from that on which the injurious words, disturbance or damage were sustained.
"And where land, timber or property has been injured, cut, damaged or destroyed from the date knowledge of such damage is received by the owner thereof."
In the case of Jones v. Texas & P. Ry. Co., 125 La. 542, 51 So. 582, 583 (1910), in interpreting this article, this court, through Justice Provosty, stated:
"A damage can be considered to have been sustained, within the meaning of article 3537, supra, only when it has manifested itself with sufficient certainty to be susceptible of proof in a court of justice."
In the same case Justice Provosty continued:
"The uncertainty which precludes the coming into existence of a cause of action for damages, and which therefore prevents prescription from beginning to run, must not be confounded with the inability of the plaintiff to procure the necessary evidence for establishing in court a cause of action known to exist. This is illustrated by the case of Brown v. Clingman, 47 La.Ann. 25, 16 So. 564, where plaintiff knew that defendant was the incendiary who had set fire to his hotel, but could not prove it, and waited to bring his suit until he could secure the necessary evidence for making the proof, and the court sustained the prescription. If, in that case, the identity of the incendiary had been unknown, the prescription could not have run, for the bringing of the suit would have been impossible.. . ." 51 So. 582, 583-584.
Equally applicable is the maxim,"contra non valentem agere, non currit prescripto." Orleans Parish School Board *75 v. Pittman Construction Co., 261 La. 665, 260 So.2d 661 (1972); Dalton v. Plumbers and Steamfitters Local Union No. 60, 240 La. 246, 122 So.2d 88 (1960); see Comment, The Scope of the Maxim Contra Non Valentem in Louisiana, 12 Tul.L.Rev. 244 (1938). Basically, prescription does not run against one who is ignorant of the existence of facts that would entitle him to bring suit, as long as such ignorance is not willful and does not result from his neglect. Walter v. Caff all, 192 La. 447, 188 So. 137 (1939); Bewley Furniture Co. v. Maryland Casualty Co., 271 So.2d 346 (La.App.2d Cir. 1972), amended 285 So.2d 216 (La.1973); see Tuminello v. Mawby, 220 La. 733, 57 So.2d 666 (1952).
In Penn v. Inferno Manufacturing Corp., 199 So.2d 210, 219 (La.App.1st Cir. 1967), writ refused, 251 La. 27, 202 So.2d 649 (1967), the Court of Appeal aptly stated:
"We further submit that the law of Louisiana is clear that prescription does not run against one without knowledge of the existence of facts which would entitle him to bring a suit against the proper defendant. . . ."
Of course the plaintiff must exercise reasonable diligence in ascertaining the identity of the party injuring him. Martin v. Mud Supply Co., 239 La. 616, 119 So.2d 484 (1960); Patin v. Stockstill, 315 So.2d 868 (La.App.1st Cir. 1975); Dagenhart v. Robertson Truck Lines, 230 So.2d 916 (La.App.1st Cir. 1970).
The record in the instant case consists merely of pleadings and briefs. No evidence relating to the time when the damage appeared is before us. Therefore, we remand this case to the trial court for a further determination of whether the plea of one year's prescription is well founded.
Accordingly, the decision of the Court of Appeal is reversed and the cause is remanded to the trial court for proceedings consistent with the views herein expressed; defendant is cast for costs of this review.
NOTES
[1] "One cannot trespass on his Neighbour's Ground.Although a proprietor may do in his own ground whatever he pleases, yet he cannot make in it any work which may deprive his neighbour of the liberty of enjoying his own, or which may cause him any damage. Thus, the proprietor of a piece of ground, on which there is no building, cannot raise one whose roof may jut out on his neighbour's ground, and there discharge its waters. Thus, one cannot make a plantation, or a building, and other works, but at certain distances from the confines. Thus, one cannot make a stove, an oven, or any other work against even a partition-wall which may be in hazard of being damaged by it. And as for such sorts of works as may do hurt, and, which cannot be made but at certain distances, or with other precautions, we ought, with regard to them, to observe the rules which custom and use have established." J. Domat, The Civil Law in its Natural Order, Book 1, Title 12,§2, No. 8 (Cushing's ed., Strahan's tr. 1861).
[2] See Stone, Tort Doctrine in Louisiana: The Obligations of Neighborhood, 40 Tul.L.Rev. 701 (1966).
[3] Yiannopoulos, Civil Responsibility in the Framework of Vicinage, 48 Tul.L.Rev. 195, 204 (1974).
[4] See Stone, Tort Doctrine in Louisiana: The Obligations of Neighborhood, 40 Tul.L.Rev. 701, at 709, wherein the author points out that such an approach finds favor among many of the French commentators.
[5] In note 14 of the Langlois decision, article 667 is cited as an example of liability for fault which does not encompass negligence.
[6] Article 670 of our Code is treated by Domat in Book 2, Title 8, Of Damages Occasioned by Faults which do not Amount to a Crime or Offence, § 3, Of the Damage which may Happen by the Fall of a Building, or of any New Work. J. Domat, The Civil Law in its Natural Order, Book 2, Title 8,§ 3, No.1573-1579.
[7] As its authority, the court cited Springer v. Aetna Casualty and Surety Co., 169 So.2d 171 (La.App.4th Cir. 1964), which held, without citing authority, that it is well settled in Louisiana that liberative prescription for tortious conduct by physicians does not begin to run until the patient discovers or reasonably should have discovered his injury.