566 So.2d 1007 (1990)
Donald P. GAHARAN, Plaintiff-Respondent,
v.
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Defendant-Relator.
Carol W. EUBANKS, et al., Plaintiffs-Respondents,
v.
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Defendant-Relator.
No. W89-1044.
Court of Appeal of Louisiana, Third Circuit.
July 24, 1990.
Writ Granted November 30, 1990.
*1008 David Lafargue, Marksville, for defendant-applicant (State).
Gaharan & Wilson, Donald R. Wilson, Jena, for plaintiff-respondent Gaharan.
Smith, Taliaferro, Russell Purvis, Jonesville, for plaintiff-respondent Eubanks.
Before STOKER, LABORDE and YELVERTON, JJ.
YELVERTON, Judge.
These consolidated cases are again before us on a writ application by the defendant, the Louisiana Department of Transportation and Development (DOTD), involving a plea of prescription. We originally granted a writ, reversed the trial judge, found that the claims asserted by the plaintiffs *1009 against the DOTD had prescribed, and ordered the dismissal of the suits. The Supreme Court then granted a writ application made by the plaintiffs, vacated our judgment, and remanded the matter to us for briefing, argument and opinion. 558 So.2d 562 (1990). We are now at the opinion stage of this process.
The facts of the case for purposes of the exception of prescription were stipulated. The State owns and maintains Louisiana Highway 8 in Catahoula Parish. This highway was improved and a new bridge over Rhinehart Creek was constructed pursuant to a state project. The roadbed of Highway 8 was elevated an additional six feet in the vicinity of the plaintiffs' homes and property. The construction began in 1977 and was completed and accepted in February 1978. Flooding and damages to plaintiffs' adjacent property have since occurred on three occasions: December 26, 1982, May 1983 and November 1987. The flooding and consequent damages occurred because the highway improvement interfered with the natural drainage in the area.
Owners of seven pieces of property filed suit, seeking injunctive relief and damages. The injunctive relief sought by all petitioners was the discontinuance of the obstruction of natural drainage caused by the new construction on the highway. The damages sought were damages occasioned by the floods that have occurred since the construction.
Plaintiff Donald Gaharan filed suit on December 23, 1985. All other plaintiffs, except Mrs. Richardson, filed their suits on February 22, 1988. Mrs. Richardson, the last property owner to sue, filed her claims on January 9, 1989.
The DOTD responded with exceptions of prescription in all the suits. The trial court overruled the exceptions finding that prescription was interrupted by an acknowledgment.
Although the exceptions of prescription were leveled at both the claims for injunctive relief and damages, the focus of attention of the parties, as well as the trial court, was on the damage claims, and what prescriptive period applied to those claims. When the trial court issued its ruling on the exception, its reasons for judgment dealt only with the claims for damages. When the DOTD's application for writs was before us the first time, we also focused our review only on the issue of prescription of the claims for damages, disregarding the issue of prescription as it affected the demands for injunctive relief. As a consequence of this oversight, when we found that the trial judge erred in overruling the exception of prescription as to the claims for damages, we granted a writ and ordered all suits dismissed.
On further review, we discover that we were in error in dismissing the suits. Although we continue to hold that the damage claims have prescribed, we hold that the claims for injunctive relief have not.
This opinion, therefore, will cover two subjects. First, we will explain why the claims for injunctive relief have not prescribed. And second, we will explain why we concluded (in our original writ grant), and still hold, that the claims for damages have.

PRESCRIPTION:

THE CLAIM FOR INJUNCTIVE RELIEF
Plaintiffs alleged, and the DOTD concedes, that their troubles exist because the State obstructed natural drainage. A natural servitude of drainage is due by an estate situated below to receive the surface waters that flow naturally from an estate situated above. La.C.C. art. 655. The owner of the servient estate may not do anything to prevent the flow of the water. La.C.C. art. 656.
When the owner of the servient estate does something to prevent the flow of the water, such as placing obstacles to drainage from the dominant through the servient estate, the remedy is a mandatory injunction ordering the owner of the servient estate to remove the obstacle. Poole v. Guste, 261 La. 1110, 262 So.2d 339 (1972). A public highway may be a servient estate. J.B. LaHaye Farms Inc. v. *1010 Louisiana Department of Highways, 377 So.2d 1286 (La.App. 3rd Cir.1979), writ denied, 381 So.2d 1222 (La.1980).
The prescription of nonuse does not run against natural servitudes. La.C.C. art. 758. This being a natural servitude, the plaintiffs' action for injunctive relief is not prescribed. Dyer & Moody, Inc. v. Dynamic Constructors, Inc., 357 So.2d 615 (La.App. 1st Cir.1978).
During oral arguments on remand, all counsel appeared to believe that injunctive relief is unavailable to the plaintiffs because of language in the case of Nuckolls v. Louisiana State Highway Dept., 337 So.2d 313 (La.App. 2d Cir.1976). The Second Circuit in Nuckolls, believing that injunctive relief against public bodies for interference with a servitude of drain, "a much harsher remedy than the award of monetary damages", would circumvent the intent of La.R.S. 9:5624 (a two year prescription statute for damages), held that injunctive relief in that case was properly denied by the trial court.
To the extent that Nuckolls can be interpreted as a statement of law that injunctive relief is not available in such cases against a public body, we disagree. We can think of no reason why a public body as the owner of a servient estate enjoys an immunity from injunctive relief for the violation of natural drainage rights, while a private party does not enjoy an immunity. It is true that in many cases involving a public body, such as the DOTD and a completed highway, the imposition of such a remedy might indeed be harsh, but there are ways for a trial court to fashion a remedy to alleviate its harshness without denying the property owners their right to the remedy. An example at hand is what the First Circuit did in Dyer & Moody, Inc. v. Dynamic Constructors, supra. There, rather than require that apartment buildings obstructing drainage be torn down, the First Circuit affirmed a trial court's decision to substitute compensatory damages as the relief due plaintiffs, even though the damage claim had prescribed. See, also, J. Weingarten, Inc. v. Northgate Mall, Inc., 404 So.2d 896 (La.1981). That case held that although specific performance might be the preferred remedy for breach of a contract, it may be withheld by the court when specific relief is impossible, when the inconvenience or cost of performing is greatly disproportionate to the damages caused, when the obligee has no real interest in receiving performance, or when the latter would have a substantial negative effect on the interests of third parties. By analogy, some of the principles announced in that case would apply where the cost of a mandatory injunction would be out of all proportion to the value of the right the obligee seeks to enforce. We have no doubt that if the trial court in the present case determines after a trial on the merits that a right to a mandatory injunction exists, and that its implementation would be too harsh, a remedy can be fashioned within the permissible latitudes of existing law. The fact that the circumstances may ultimately result in effectively withholding from the DOTD the enjoyment of the benefits of the accrual of prescription of the damage claims, is irrelevant.

PRESCRIPTION:

THE CLAIM FOR DAMAGES
On this subject we will first address the issue of interruption of prescription by acknowledgment, because this was the basis for the trial court's overruling of the exception of prescription of the damage claims. La.C.C. art. 3464 provides:
Art. 3464. Interruption by acknowledgment
Prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe.
Acknowledgment need not be in any particular form, and it may be tacit. Flowers v. U.S. Fidelity & Guaranty Co., 381 So.2d 378 (La.1980). Nevertheless, an acknowledgment must evidence a clear intent to interrupt the running of prescription. Frederick v. Aetna Life & Cas. Co., 467 So.2d 600 (La.App. 3rd Cir.1985). Recognition of the mere existence of a disputed claim is not such an acknowledgment *1011 as will effect an interruption. Wooden v. Hartford Ins. Co., 335 So.2d 742 (La.App. 2d Cir.1976); Marathon Ins. Co. v. Warner, 244 So.2d 353 (La.App. 2d Cir.1971).
In finding an acknowledgment the trial judge relied on written correspondence between the DOTD and Gaharan's counsel. We find that the trial court's interpretation of this correspondence to effectuate an acknowledgment was clearly wrong. The correspondence cannot be construed as an expression of an intent to interrupt the running of prescription on the claims for damages.
The first letter by the DOTD was signed by the district administrator and was dated June 24, 1983. It responded to a flooding complaint on behalf of Mr. Gaharan, and stated that a report had been submitted to the Director of Maintenance and Field Operations for a study and evaluation. The DOTD's next letter, dated May 8, 1984, was from one of its attorneys, and the next, dated October 5, 1984, was from one of its engineers. Both of these latter two letters merely informed counsel for Gaharan that the only two methods of recourse open to Gaharan were to file suit against the State or seek recovery under the Small Claims Act. None of these letters expressed an intent to interrupt prescription.
The last letter sent by the State, which plaintiffs rely on most strongly, is dated October 26, 1984. It stated that an attempt would be made to get an item in the next year's legislative budget to make appropriate changes to this structure. It stated that funding would have to be approved by the legislature in order for the work to be accomplished. There was never an acknowledgment of plaintiffs' claims for damages, or even mention of damages. The only thing mentioned in that letter was that an attempt would be made to get money appropriated to modify the structure. No interruption by acknowledgment under La.C.C. art. 3464 took place.
Having concluded that the running of prescription on the claims for damages was not interrupted by an acknowledgment, we turn next to a consideration of what prescriptive period applies. On this subject, we will first respond to the plaintiffs' arguments that the three year prescription of La.R.S. 13:5111 applies. This statute provides a three year prescriptive period for the taking of property by appropriation, rather than expropriation, by a public body. For this statute to apply, it must first be determined whether the improvements to Highway 8 constituted a "taking" of the plaintiffs' property. The plaintiffs argue that, while the State never went on their property in the construction, or damaged it in the usual sense, the result of the restriction in the flow of water constitutes the taking of the predial servitude of natural drainage.
We disagree with this proposition. While a predial servitude is an incorporeal immovable (La.C.C. art. 649), and is therefore an immovable real right, the act of impeding the flow of the water that constitutes natural drainage does not amount to a taking of the right belonging to the dominant estate. The servitude of natural drainage still exists. Water still runs off the dominant estates and down Rhinehart Creek. Most of the time, the drainage is as effective as it was before. Only three times in the last decade have the impediments caused by the extra elevation of the highway and the reduced capacity of the bridge span over Rhinehart Creek, significantly obstructed the flow of the water.
Plaintiffs argue the application of Hawthorne v. La. Dept. of Public Works, 540 So.2d 1261 (La.App. 3rd Cir.), writ denied, 544 So.2d 406 (La.1989). Hawthorne is distinguishable. Hawthorne involved the construction of the Ouachita-Black River Navigation Project which resulted in increased mean sea levels in water bodies bordering plaintiffs' properties. The increased mean sea levels caused permanent flooding of the properties owned by plaintiffs. Before the construction, the property flooded only periodically. After the construction, permanent flooding rendered the property useless. For that reason, this court concluded that that amounted to a taking, and because the taking was done by appropriation we applied the three year prescriptive period of La.R.S. 13:5111. In *1012 the instant case there was no taking by appropriation or otherwise.
We conclude, for the following reasons, that the applicable prescriptive period is two years. "Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him." This is the language of La.C.C. art. 667, a predial servitude article stating the obligation of neighborhood. The applicable prescriptive period for a suit for damages caused by a violation of the duty imposed by Article 667 is one year. Dean v. Hercules, Inc., 328 So.2d 69 (La.1976). This is because the nature of the obligation imposed by Article 667 is closely associated with the nature of the obligation imposed by Article 2315, and the action for Article 2315 damages prescribes in one year. Id. Where recovery is based on the obligations of an owner under the natural drainage Article 656, it is likewise based on the owner's use of property that causes damage to a neighbor. By the same reasoning as that employed in Dean, we find that the action for damages caused by a breach of the obligation not to do anything to prevent natural drainage, prescribes in one year. However, whenever private property is damaged for public purposes, i.e., when a public body going about public business is the damage-causing neighbor, the applicable prescription is two years as provided by La.R.S. 9:5624. This statute reads:
When private property is damaged for public purposes any and all actions for such damages are prescribed by the prescription of two years, which shall begin to run after the completion and acceptance of the public works.
This statute was amended in 1987 to provide that the period of prescription shall begin to run after completion and acceptance of the public works, instead of when the damages were sustained. The completion and acceptance of the public work in this case was in February 1978. The first flooding and damages occurred on December 26, 1982. Under the statute as it read and was interpreted prior to 1987, the prescriptive period began with the first occurrence of any damage after the completion of the public work. Lyman v. Town of Sunset, 500 So.2d 390 (La.1987); Myers v. Iberia Parish Council, 490 So.2d 1177 (La. App. 3rd Cir.), writ denied 493 So.2d 1225 (La.1986). Repeated instances of flooding do not serve to interrupt prescription on damage claims. Carbo v. Hart, 459 So.2d 1228 (La.App. 1st Cir.1984), writ denied 462 So.2d 654 (La.1985); Nuckolls v. Louisiana State Highway Dept., supra. The "continuing tort" theory that prescription does not begin to run until the tortious conduct ceases does not apply to the two year prescription of La.R.S. 9:5624. Lyman v. Town of Sunset, supra.
We need not consider the question of retroactive application of the amendment to La.R.S. 9:5624, because it makes no difference to the outcome. In the present case, the first suit, that of Gaharan, was filed on December 23, 1985. The first damage caused by flooding occurred on December 26, 1982, three years earlier. Even if we apply the more liberal provisions of the statute, as it read before the amendment, for the commencement of the running of prescription, all seven claims for damages have prescribed.
For the foregoing reasons, the writ application of the DOTD is denied, insofar as it pertains to the trial court's tacit overruling of the DOTD's exception of prescription to the claims for injunctive relief. The writ is granted, however, and made peremptory, regarding the overruling of the exception of prescription to the damage claims. The exception of prescription as to the damage claims are maintained, and these claims are dismissed at the plaintiffs' costs.
WRIT DENIED IN PART, GRANTED IN PART, AND MADE PEREMPTORY.