UCANNELLA, Judge.
Defendant, St. Charles Parish, (the Parish) appeals from a judgment awarding compensation to plaintiffs, Julius and Pyramid Sellers, for the taking of three pieces of property by virtue of expropriation, with and without the formalities. We affirm in part, reverse in part and remand.
On February 24, 1993, plaintiffs filed suit against the Parish. Plaintiffs, brother and sister, are the owners of a certain tract of land in St. Charles Parish. Plaintiffs allege that in 1975 the Parish obtained a fifteen foot wide waterline servitude for the entire length of the eastern property line of the tract and in 1989, the Parish took a thirty foot wide drainage servitude along the western property line of the tract. The petition asserts that the Parish never paid for the taking of plaintiffs’ land.
On April 16, 1993, plaintiffs amended their petition to include the allegation that the Parish, in an earlier expropriation proceeding, had wrongfully obtained a five foot wide waterline servitude along the southern property line of the tract, in violation of the |3default judgment of expropriation which specified that the servitude be on the south side of a railroad servitude, not on the north side (where it was actually taken).
The Parish filed a peremptory exception of prescription, based on the two year statute of limitations provided in La.R.S. 9:5624, or alternatively, the three year statute of limitations provided in La.R.S. 13:5111. After briefing, testimony and argument, the trial court dismissed the Parish’s exception and ordered the Parish to file its answer. A judge trial was held on January 10,1994 and the trial judge took the matter under advisement. On March 28, 1994, the trial court rendered judgment, awarding plaintiffs $144,969, representing compensation for the taking of the property in question, together with legal interest from the date of judicial demand until paid and all costs of the proceedings. Expert fees were fixed at $4,500 per expert and taxed as costs. Attorney’s fees were fixed at 25% of the amount awarded to plaintiffs.
On appeal, the Parish asserts that the trial court erred in failing to grant its plea of prescription and that the trial court erred in awarding compensation to plaintiffs in the amount of $144,969.

PRESCRIPTION

The Parish cites R.S. 13:5111, which pro: vides for a three year prescriptive period in a proceeding to recover just compensation in an action other than expropriation. It states:
A. A court of Louisiana rendering a judgment for the plaintiff, in a proceeding brought against the state of Louisiana, a parish, or municipality or other political subdivision or an agency of any of them, for compensation for the taking of property by the defendant, other than through an expropriation proceeding, shall determine and award to the plaintiff, as a part of the costs of court, such sum as will, in the opinion of the court, compensate for reasonable attorney fees actually incurred because of such proceeding. Any settlement of such claim, not reduced to judgment, shall include such reasonable attorney, engineering, and appraisal fees as are actually incurred because of such proceeding. Actions for compensation for property taken by the state, a parish, municipality, or other political subdivision or any one of their respective agencies Ushall prescribe three years from the date of such taking.
B. The rights of the landowner herein fixed are in addition to any other rights he may have under the constitution of Louisi *369 ana and existing statutes, and nothing in this Part shall impair any constitutional or statutory rights belonging to any person on September 12,1975. (Emphasis added)
The Parish asserts that plaintiff, Julius Sellers, knew of the takings and that the takings occurred more that three years prior to the filing of suit. It also contends that, based on the testimony, plaintiffs’ had constructive knowledge of the takings. Furthermore, the parish contends that severance damages are prescribed under a two year limitation in R.S. 9:5624. The statute states that prescription begins for severance damages due to ivork for public purposes, “after the completion and acceptance of the public work ”
Plaintiffs argue in response that the 1970s’ claims are not prescribed because, although they knew of the takings, they did not know that their mother had not been paid for the takings, until they did research with their mother for a partition in 1991. Plaintiffs argue that prescription does not run until discovery by the landowner. They further contend that the two year prescriptive period does not apply because it only relates to damages caused by the construction of things for the public purpose, but not for construction based on expropriation or appropriation proceedings, citing Roberts v. Murphy Oil Corp, 577 So.2d 308 (La.App. 4th Cir.1991). Concerning the drainage line, plaintiffs assert that it was dug within the three year prescriptive period.
At trial plaintiffs, Julius Sellers, testified that he and his sister, Pyramid (who lived in New York and for whom he held a power of attorney) owned the property in question. He testified that in the early 1970s, the St. Charles Parish Bureau of Waterworks, as a result of a bond issue that was passed, installed a fifteen foot wide waterline along the east side of his property. He stated that he knew of the waterline’s construction and existence, but did not realize until 1991 that neither he nor any member of his family was compensated for the waterline. He testified that the|sproperty was partitioned among his mother, himself and his two sisters in 1991.[1]
Concerning the second taking, involving the waterline constructed along plaintiffs south property line which was allegedly taken on the wrong side of the railroad tracks, Julius Sellers testified that, in the mid-1970s, the Parish filed an expropriation proceeding to take the land, which he failed to answer or contest. He testified, however, that the land was supposed to be taken on the south side of a railroad servitude, but that in the year prior to the instant trial, he discovered that the Parish actually took the property on the north side of the railroad tracks. He admitted that he received a copy of the expropriation petition, which declared that the Parish was taking the property on the north side. He did not answer the suit nor attend any proceedings relative to the expropriation. It was unclear whether he received a copy of both the original and amended judgments. Mr. Sellers testified that he was compensated fifty dollars for the taking of this particular piece of land.[2]
The record includes a copy of the February 12, 1975 default judgment of expropriation which specified that the land to be taken was south of the railroad tracks. However, there is also an “amended judgment” in the record, dated February 24, 1975, which amended the “typographical error” in the original judgment and changed “the word ‘south’ to the word ‘north.’”[3]
The third taking involved a thirty foot wide drainage servitude which borders the western property line of plaintiffs’ tract. Julius Sellers testified that in the late |61980s, he *370 was visited by several St. Charles Parish officials who requested that he allow them to construct the ditch to aid drainage and prevent flooding in the area. He testified that they stated that this ditch was an emergency measure because of severe problems with flooding. Although he acquiesced in their request, he stated that he did not ask to be compensated for the taking and did not sign any agreements regarding the land. Testimony from Richard Shread, a civil engineer who worked on the drainage ditch, revealed that the ditch, which was part of a large drainage project in the area, was completed in December of 1990. However, Mr. Sellers disagreed. He testified that the project has not been completed and the area is still in a state of disrepair.
The Parish argues that all three of plaintiffs’ claims of takings without just compensation have prescribed by virtue of the two year prescriptive period provided in La.R.S. 9:5624, or alternatively, the three year prescriptive period provided in La.R.S. 13:5111. However, neither R.S. 9:5624 nor R.S. 13:5111 directly addresses the situation before us today.[4] Instead, we find that La.R.S. 19:1, et seq., which includes the codification of the St. Julien Doctrine in R.S. 19:14, paragraph 2, governs the Sellers’ claims for the land taken.
It is a well established principle of statutory interpretation that when two conflicting statutes are applicable to the same situation, the one more specifically directed to the matter at issue must prevail as an exception to the more general statute. Lyman v. Town of Sunset, 500 So.2d 390 (La. 1987); Smith v. Cajun Insulation, Inc., 392 So.2d 398 (La.1980); Boudreaux v. Terre-bonne Police Jury, 422 So.2d 1209 (La.App. 1st Cir.1982).
|7This court, in Vial v. South Central Bell Telephone, 423 So.2d 1233, 1236-7 (La.App. 5th Cir.1982), writ denied, 432 So.2d 265 (La.1983), examined the history of the St. Julien Doctrine:
The St. Julien Doctrine developed juris-prudentially as an adjunct to and deviation from Louisiana’s expropriation laws. LSA-C.C. arts. 2626-2641. Dating back to St. Julien v. Morgan’s Louisiana & Texas Railroad Co., 35 La.Ann. 924 (1883), the doctrine provided public or quasi-public corporations possessing the power of expropriation a method of acquiring servi-tudes or rights-of-way over the land of another without resort to expropriation proceedings. However, it was necessary that the landowner had knowledge of the construction and consented to it or acquiesced in it. Allowing the structures to remain, it granted the landowner damages only for their presence. Lake, Inc. v. Louisiana Power and Light Co., 318 So.2d 911, 912 (La.App. 4th Cir.1975); reversed 330 So.2d 914 (La.1976). The Louisiana Supreme Court in Lake, supra, overruled the doctrine prospectively as it related to acquisition of discontinuous apparent servi-tudes; however, in October of the same year, the legislature enacted the Doctrine in LSA-R.S. 19:14.
⅜ Hi ⅜ # * *
Implicit in the St. Julien Doctrine is proof that the taking of property is necessary for the general use. LSA-C.C. art. 2626. Explicitly, it requires a consent or acquiescence by the landowner to the taking of the property without expropriation proceedings. The landowner consents or is presumed to have consented to that which an expropriation suit would have compelled him to yield. Moore Planting Co. v. Morgan’s Louisiana & Texas Railroad Co., 126 La. 840, 53 So. 22 (1910).
La.R.S. 19:14, the codification of the St. Ju-lien Doctrine, provides:
In any case where the state or its political corporation or subdivision has actually, in good faith believing it had authority to do so, taken possession of privately owned immovable property of another, and constructed facilities upon, under or over such property with the consent or acquiescence *371 of the owner of the property, such owner shall be deemed to have waived his right to contest the necessity for the taking and to receive just compensation prior to the taking, but he shall be entitled to bring an action for such compensation, to be determined in accordance with the provisions of Section 9 of this Title, for the taking of his property or interest therein, the just compensation to be determined as of the time of the taking of the property, or |8right or interest therein, and such action shall proceed as if the state, its political corporation or subdivision had filed a petition for expropriation as provided for in Section 2.1 of this Title.
In the case where any corporation referred to in Section 2 of this Title has actually, in good faith believing it had the authority to do so, taken possession of privately owned immovable property of another and constructed facilities upon, under or over such property with the consent or acquiescence of the owner of the property, it will be presumed that the owner of the property has waived his right to receive just compensation prior to the taking, and he shall be entitled only to bring an action for judicial determination of whether the taking was for a public and necessary purpose and for just compensation to be determined in accordance with Section 9 hereof, as of the time of the taking of the property, or right or interest therein, and such action shall proceed as nearly as may be as if the corporation had filed a petition for expropriation as provided for in Section 2.1 of this Title. (Emphasis added.)
As noted in Campbell v. Louisiana Intrastate Gas Corp., 528 So.2d 626, 629 (La.App. 2 Cir.1988), La.R.S. 19:14 directs that the landowner’s action for compensation for the taking be governed by the procedural provisions of La.R.S. 19:2.1. La.R.S. 19:2.1 B provides: “All claims for property by, or for damages to the owner caused by the expropriation of property pursuant to R.S. 19:2 shall be barred by the prescription of two years commencing on the date on which the property ivas actually occupied and used for the purposes of the expropriation.” (Emphasis added.)
In Jungeblut v. Parish of Jefferson, 485 So.2d 974, 977 (La.App. 5 Cir.1986), this court stated that, like the St. Julien Doctrine, La.R.S. 19:14 requires a good faith taking and acquiescence or consent of the owner.[5] In this case, Mr. Sellers testified that he and his family knew of and acquiesced in each taking at the time of each taking. The evidence further shows that the Parish took the parcels at issue, believing it had the consent and/or acquiescence of plaintiffs and thus, the Parish acted in good faith in 19constructing the two waterlines along the eastern and southern property lines of plaintiffs’ property and in constructing the drainage ditch along the western property line. There was no question that these constructions were necessary for the general use.
Concerning the time of each taking, testimony at trial revealed that construction of the waterline along the eastern property line commenced and ended in the early 1970s and construction of the waterline along the southern property line began and ended in the mid-1970’s. The Sellers did not file suit for compensation for these takings until February 24, 1993. Pursuant to the two year prescriptive period provided in R.S. 19:2.1 B, these claims by the Sellers for just compensation have prescribed.[6] However, R.S. 19:2.1 B also provides that the prescriptive period does not begin to run until the date “on which the property was actually occupied and used for the purposes of the expropriation.” There was contradictory evidence relative to whether the the drainage canal which was started in 1989 or 1990, had been completed and occupied for the purposes of the expropriation. Julius Sellers testified *372 that it was not completed. Mr. Shread stated that the ditch was completed. We do not have the benefit of the trial judge’s determination of credibility in this matter since he did not rely on R.S. 19:2.1 B. Taking the testimony as a whole, however, we find that the project has not yet reached completion for purposes of the commencement of the running of the two year prescriptive period under R.S. 19.2.1 B. This portion of the judgment will be affirmed.
In regard to the amount of compensation awarded by the trial judge, the judgment does not separate the award according to the value of each taking. Since we | xphave found that the action for compensation for two of the three takings were prescribed, we must remand the matter for a determination of the value as of the date of the taking, under R.S. 19:14, for the property lost to the Parish for the construction of the drainage ditch in 1989 or 1990.
Accordingly, the trial court judgment is hereby reversed in part, affirmed in part and remanded. The judgment denying the exception of prescription filed by the Parish of St. Charles is reversed as to the action for compensation for the expropriation, or taking, of the two waterlines constructed in the 1970s. The plaintiffs’ suit for these takings are hereby dismissed.
The judgment of the trial court denying the exception of prescription filed by the Parish of St. Charles for the taking of the property required for the construction of the drainage ditch in 1989 or 1990 is hereby affirmed. The case is remanded for a new trial on the value of the property taken for the drainage ditch.
REVERSED IN PART; AFFIRMED IN PART AND REMANDED.
WICKER, J., concurs in part.

. The record indicates that the property had been owned by Mr. Sellers’ family for some time, that throughout all pertinent times it was owned in division by Julius Sellers, his siblings and his mother, and that in 1991, he and his sister, Pyramid, bought out his mother and other sister.

. The original judgment provided that Mr. Sellers be awarded $58.50 as just compensation. Apparently, Mr. Sellers received that amount.

. The waterline across the southern boundary of the Sellers’ property was apparently part of a much larger project; the amended judgment affected fourteen individuals, including Mr. Sellers, who apparently owned land along the railroad.

. R.S. 9:5624 governs situations where "private property is damaged for public purposes, i.e., when a public body going about public business is the damage-causing neighbor." Gaharan v. State Through Dept, of Transp. and Development, 566 So.2d 1007, 1012 (La.App. 3 Cir.1990).
R.S. 13:5111 specifically governs takings without formalities or consent or acquiescence.

. See for comparison Howard v. Louisiana Power & Light Co., 583 So.2d 503 (La.App. 5 Cir.1991), where plaintiffs did not acquiesce in the taking, nor did they know of it.

. We note that while the St. Julien Doctrine and R.S. 19:14 govern informal necessary, consensual takings, the second taking in the instant case (the property along the north side of the railroad tracks) was made pursuant to a formal expropriation proceeding. The prescriptive period in R.S. 19:2.1 B applies to the second taking also since R.S. 19:1, et seq. was enacted to govern formal expropriation proceedings.