803 So.2d 229 (2001)
Charles C. ELMER
v.
WEST JEFFERSON LEVEE DISTRICT.
Nos. 01-CA-248, 01-CA-249.
Court of Appeal of Louisiana, Fifth Circuit.
November 27, 2001.
Opinion on Grant of Rehearing January 7, 2002.
*231 Stephen N. Elliott, Howard B. Kaplan, Bernard, Cassisa & Elliott, Metairie, LA, Attorneys for Plaintiff/Appellant, Charles C. Elmer.
Kenneth E. Pickering, Pickering & Cotogno, New Orleans, LA, Attorney for Defendant/Appellee, West Jefferson Levee District.
Bruce A. North, David L. Colvin & Associates, Gretna, LA, Attorney for Plaintiff/Appellee, Parish of Jefferson.
John J. Molaison, Jr., Gretna, LA, Attorney for Defendant/Appellee, The City of Westwego.
Randall L. Kleinman, Hulse & Wanek, New Orleans, LA, Attorney for Plaintiff/Appellant, Essex Insurance Company.
Panel composed of Judges THOMAS F. DALEY, EDWARD A. DUFRESNE, Jr., and WALTER J. ROTHSCHILD.
DALEY, Judge.
Charles C. Elmer, plaintiff, appeals the dismissal of his suit against West Jefferson Levee District, Jefferson Parish, and the City of Westwego. We affirm the dismissal of the suit as to defendants Jefferson Parish and the City of Westwego, but reverse as to West Jefferson Levee District and remand the case to the trial court.

PROCEDURAL HISTORY
The plaintiff, Charles C. Elmer, filed suit on February 2, 1989, against West Jefferson Levee District (WJLD) alleging that construction of a levee along the northern edge of his property was an illegal taking of property and caused devaluation of his remaining property. Elmer specifically alleges that "the continued presence of the levee amounts to an expropriation by inverse condemnation." Elmer states in his petition that his property sustained no serious flooding prior to 1986, but afterward flooding caused by the levee seriously damaged his property. He prays in his petition for compensation for the past damages to his property and compensation for the reduction in market value as a result of the expropriation.
In 1991, after Elmer's property flooded, a separate suit, Yates, et al. versus Charles Elmer, et al., No. 417-594, 24th Judicial District Court, was filled wherein several tenants instituted suit against Elmer and his liability insurer for flood damages to mobile homes located within a mobile home park located on Elmer's property. Elmer filed a third party claim against WJLD alleging that WJLD contributed to the cause of the flooding. The second suit was consolidated with Elmer's pending suit against WJLD. Elmer and his insurer settled with the mobile home owners, but seek indemnification and contribution from WJLD.
On June 11, 1997, Elmer filed a Second Supplemental and Amending Petition alleging *232 that, in addition to the levee to the north of his property, WJLD also built levees to the east and west of his property, which contributed to the cause of the flooding of his property. Elmer also alleged that the airport and trailer park located on his property had to be closed, resulting in loss of income and substantial reduction in the property's market value.
On November 5, 1998, Elmer filed a Third Supplemental and Amending Petition adding Jefferson Parish and the City of Westwego as defendants. Elmer specifically alleged that Jefferson Parish worked in conjunction with WJLD to build the levees in question and WJLD and Jefferson Parish were jointly and solidarily liable for damages caused to his property. Elmer also asserts that the City of Westwego closed a thirty (30") inch culvert, which added to and/or increased the flooding on his property.
Jefferson Parish filed a Motion for Summary Judgment relying on the fact that on May 26, 1983, WJLD assumed full responsibility for the Westwego levees. The Parish argues that they are not liable to Mr. Elmer for levee related flooding. Jefferson Parish also filed an Exception of Prescription contending that the plaintiff's claim had prescribed. The City of Westwego likewise filed a Motion for Summary Judgment. They contend that the City only closed the culvert in the levee to protect the City of Westwego from flooding and that the City was immune from damages pursuant to the Louisiana Disaster Act of 1974, LSA-R.S. 29:727, and LSA-R.S. 9:2798.1. The City also alleged that plaintiff's claim against them had prescribed. WJLD also filed an Exception of Prescription and a Peremptory Exception of No Cause of Action and Motion for Summary Judgment. WJLD argued that the plaintiffs claim for damages had prescribed under either of three applicable statutes: LSA-R.S. 9:5624 (2 years), LSA-R.S. 13:5111(A) (3 years), or LSA-R.S. 9:5626 (2 years).
On September 15, 2000, the trial court conducted a hearing on the defendants' Motions for Summary Judgment and Exceptions of Prescription. The trial court granted the City of Westwego's and Jefferson Parish's Motions for Summary Judgment and Exceptions of Prescription, but deferred WJLD's Exception of Prescription to the trial on the merits.

SUMMARY OF TRIAL COURT'S RULINGS
The trial court ruled that WJLD had, at all pertinent times, the authority and responsibility to build and maintain the levees, and that although the City of Westwego and Jefferson Parish could at their discretion assist in levee construction, that liability for any damage caused by the construction and maintenance of the levee was the responsibility of the WJLD.
The trial court found that there was nothing in the plaintiffs Third Supplemental Petition asserted against Jefferson Parish or the City of Westwego that would cause it to relate back to the original petition filed in 1986. The trial court ruled that neither the Parish of Jefferson or the City of Westwego were solidarily liable with the WJLD; therefore, the original petition against the WJLD did not toll prescription for claims against the Parish or the City in the Third Supplemental and Amended Petition.
The trial court found that additional factual evidence was necessary before it could rule on the motions filed by WJLD. The court indicated that it would alter the order of the trial on the merits and requested that the parties first put on additional evidence regarding prescription. The court would then rule on the issue of prescription as to WJLD before accepting *233 evidence of the issues of causation and damages.
The trial on the merit began on October 3, 2000. Additional testimony was taken on October 4th and 10th, 2000. After hearing all of the evidence on the issue of prescription, the trial court granted WJLD's Exception of Prescription. The trial judge delivered extensive and thorough Reasons for Judgment from the bench.

FACTS
The plaintiff, Charles Elmer (Elmer), is the owner of property located in Westwego, Louisiana, in the Parish of Jefferson. The property runs south of and perpendicular and is adjacent to Lapalco Boulevard, but outside the flood protection levee, which makes the southern boundary of Westwego Municipal Drainage District No. 1.
The parties developed at trial a history of the drainage and flood protection projects in the area. Westwego Municipal Drainage District No. 1 was created by the Jefferson Parish Police Jury on February 5, 1919. The Engineers Report of the District dated September 15, 1919, called for the draining and reclamation of the District by a means of a system of canals and pump stations. The plan called for the excavation of a canal along the southern boundary of the district, which was named "Outfall Canal A." The plan proposed that a canal run along the northern front of the Elmer property parallel to what is now Lapalco Boulevard. Plaintiff claims that the canal did not go completely across the front of the Elmer property. Defendant contends the Outfall Canal was dug completely across the front of the Elmer property and that the soil dug from the ground to build the canal was deposited on the south side of the canal forming a levee system intended to enclose the entire drainage district. Ground dug to build a canal is referred to as spoils, and when piled in a hill parallel to the canal is referred to as a spoil bank.
The WJLD was created by virtue of Act No. 820 of the 1980 regular session of the Louisiana Legislature and included, "all of the land in the Parish of Jefferson on the west side of the Mississippi River." The WJLD was constituted as a corporation and public body with the power to sue and be sued. The WJLD was vested with control of all public levees in the district with authority to locate, construct, and repair the levees within its jurisdiction. By virtue of Resolution No. 46399 dated December, 1982, the Jefferson Parish Council granted to WJLD a "permanent right-of-entry and the authority to exercise its rights over all levees on publicly owned lands, servitudes, rights-of-way, and easements for the purpose of assuming all responsibility for the integrity and maintenance of said levees." On May 26, 1983, the WJLD formally assumed full responsibility for the Westwego levee.
In the 1950's Dr. Charles Elmer, the father of plaintiff, began developing the subject property as a seaplane airport known as the Westwego Airport. The water area used for the seaplane runway was referred to as the Sea Plane Canal. During the process of excavation, the spoils from the Sea Plane Canal were placed on the north, east, and west side of the canal. This excavation increased the elevation of the property surrounding the Sea Plane Canal, forming a raised plateau of land. The property was used commercially as a Sea Plane Airport from sometime in the 1950's until it ceased operation in 1989. In the 1960's, Elmer opened the Cypress Garden Trailer Park on the Elmer property adjacent to the Sea Plane Canal. The mobile home park operated until sometime in the early 1990's.
*234 While a number of witnesses testified at trial concerning the history of levee and drainage activities on and in the vicinity of the Elmer property, the trial court relied extensively in her findings on the testimony of Geneva P. Grille, an engineer employed by the State of Louisiana, Department of Transportation and Development who consulted with the WJLD on the levees in question and who was accepted by the Court as an expert in civil engineering, hydrologics and levee design, permitting, and construction. Ms. Grille testified that the levee in front of Elmer's property existed as far back as 1920 based on her review of public documents. She testified that in the 70's the height of the levee in front of the property was three to four feet and was continuous across the property. She recommended in the early 1980's that all levees be raised to a minimum six feet in accordance with the requirements of the Flood Insurance Program. She testified that this was done in the 1982-84 time frame. She also testified that the levees were continuously being raised by the WJLD because of the sinking, wear, and degrading of the levees.
Ms. Grille explained that during Hurricane Juan in 1985 some levees in West Jefferson Parish were topped and some were breached. During Hurricane Juan sandbags were placed on top of the levee on the north side of Elmer's property. After Hurricane Juan, there was a tremendous amount of levee work performed in West Jefferson. The levees on the east and west of the Elmer property were reconstructed and new levees were built. Ms. Grille testified that after Juan the levee in front of the Elmer property was raised to six feet on the existing base or footprint, but a new levee was not constructed in that location.
Understanding and analyzing the facts of this case was complicated by the fact that the canals and levees were sometimes referred to by different names and by the fact that the WJLD, in cooperation with the Army Corp of Engineers, after the fact complained about in this suit, began construction of a Hurricane Protection Levee (a taller, wider levee), which parallels or in some instances replaced the levees in question in this suit. In 1999, the WJLD initiated an expropriation proceeding in the 24th Judicial District Court and expropriated portions of Mr. Elmer's property for the building of the Hurricane Protection Levee. Elmer claims that the fact that WJLD filed suit to expropriate is proof of inverse condemnation. WJLD claims the 1999 expropriation affects a different portion of Elmer's property.

ASSIGNMENTS OF ERROR
Appellant, Charles Elmer, alleges three Assignments of Error:
1. The Trial Court committed legal error in finding plaintiffs cause of action against WJLD had prescribed.
2. The Trial Court committed legal error in granting the Motion for Summary Judgment and Exception of Prescription for the City of Westwego.
3. The Trial Court committed legal error in granting the Motion for Summary Judgment and Exception of Prescription for Jefferson Parish.

ASSIGNMENT OF ERROR ONE
There are three prescriptive statutes in question in this case. LSA-R.S. 9:5624 Actions for damages to property damaged for public purposes creates a two year prescriptive period "which shall begin to run after the completion and acceptance of the public works"; LSA-R.S. 9:5626 Actions and claims for lands and improvements used or destroyed for levees or levee drainage purposes creates a two year prescriptive period, which begins to *235 run from "the date on which the property was actually occupied and used or destroyed for construction of levees or levee drainage works"; and LSA-R.S. 13:5111 Appropriation of property by state, parish, municipality or agencies thereof; attorney, engineering and appraisal fees; prescription creates a three year prescriptive period, which begins to run from the date of "taking" of the property.
The trial court found that the levee in front of (north side) Mr. Elmer's property existed as early as 1919-1920 when the spoils of the Outfall Canal A were placed there. The trial court found that the WJLD did not increase the base or footprint of the levee in front of the Elmer property in 1986. The court found that the work performed by WJLD in the 1980's did not amount to building a "new levee," but rather maintained an existing one. Based on these findings, the trial court ruled that the raising of the levee in front of the plaintiff's property "from four (4') feet to six (6') feet on the same footprint was not a new taking." The trial court granted the Exception of Prescription, applying LSA-R.S. 9:5626, finding that there was no new taking within two years of plaintiffs filing his petition. The trial court found that a servitude of use had existed based on the "continuous use" and upgrading of the levee since 1920.
In Wynat Development Co. v. Board of Levee Com'rs For Parish of Orleans, 97-2121, (La.4/14/98), 710 So.2d 783, the Louisiana Supreme Court granted a writ to determine whether the prescriptive period governing claims for compensation for property appropriated for levee purposes is the two year period found in LSA-R.S. 9:5626 or the three year period found in LSA-R.S. 13:5111. The court held that LSA-R.S. 9:5626 was implicitly repealed and that the applicable prescriptive period is provided in LSA-R.S. 13:5111. Although the trial court incorrectly relied on LSA-R.S. 9:5626 and not LSA-R.S. 13:5111, the reliance on the wrong statute is of no import because the three year prescriptive period of LSA-R.S. 13:5111 is clearly met. The trial court ruled that the "taking" occurred in 1920, over 60 years before the petition was filed. The trial record supports the trial court's finding that no new taking occurred within three years of suit being filed.
While the finding of no new taking defeats plaintiffs claim for the value of the land on which the levee existed, it does not resolve the claim for damage allegedly caused to plaintiffs property due to levee construction and/or maintenance between 1986 and 1988. The trial judge in her reasons acknowledged the applicability of LSA-R.S. 9:5624. She stated:
Louisiana Revised Statute, Title 9:5624, describes a two year prescriptive for actions of damages when public property is damaged for public purposes after the completion and acceptance of the public work, and that is important. The after completion acceptance of public work is important with regard to this exception, and must be addressed by the Court.
Although acknowledging the applicability of LSA-R.S. 9:5624 and acknowledging that a determination of the date of completion and/or date of acceptance of the levee work was necessary, the trial court did not establish the completion and/or acceptance dates.
The plaintiff alleges that the raising of the levee in front of his property and the building of new levees on the east and west, adversely affected his property. The plaintiff argues that after the levees were raised following Hurricane Juan, his property did not drain properly, thereby causing him to close the trailer park and airport, both located on his property.
*236 The trial record establishes that there was several levee projects undertaken as a result of the flooding caused by Hurricane Juan in the area:
1. The topping of the levee to the north of the Elmer tract.
2. Repair to the existing levee and then relocation and construction of a new levee to the east of the Elmer tract (sometimes referred to as the Westminster Levee).
3. Repair to the existing levee and then relocation and construction of a new levee to the west of the Elmer tract (sometimes referred to as the Westwego Levee).
The trial judge concluded that the levee in front of Elmer's property was topped back to six feet in 1986; "The testimony is that in 1986 what happened was the levee was topped back to 6 feet." The trial judge in her reasons also acknowledged a memo from the Jefferson Parish President:
There is a memo, a 1988 memo sent on behalf of the parish president, which would seem to indicate that between 1986 and 1988, after Hurricane Juan, that work done on this portion of the levee, like the work done on the levee to the east and the west of the Elmer property, eventually was done behind the original levee. (Trial record p. 1233.)
Plaintiff's Exhibit 38, an aerial photograph of the area, reveals the locations of the old and new levees, and clearly demonstrates how the new levee construction to the east and west of Elmer's property tied directly into the levee in front (north side) of the Elmer property.
This court cannot determine from the record the exact date that the levee project to the east and west of the Elmer property were completed. The record does indicate that Michael Yenni, Jefferson Parish President, dedicated the levee project on May 26, 1988. A memo from his office introduced as Exhibit P-250B states, "In October, 1987, newly elected Parish President Michael J. Yenni designated completion of the levee as priority number one, and construction began." A report by the Director of Public Utilities for Jefferson Parish, Mr. Peter Russo, entitled "Westwego Levee-Phase I Improvements" states that on April 16, 1987, a decision to reinforce and recap the existing levee to safeguard against future hurricanes was made. Construction on Phase I began on June 25, 1987.
This case is analogous to Gaharan v. State Through Dept. of Transp. and Development, 566 So.2d 1007, (La.App. 3 Cir. 1990), In Gaharan, the State owned and maintained Louisiana Highway 8 in Catahoula Parish. This highway was improved and a new bridge over Rhinehart Creek was constructed pursuant to a State project. The roadbed of Highway 8 was elevated an additional six feet in the vicinity of the plaintiffs' homes and property. Flooding and damages to plaintiffs' adjacent property occurred after the construction was completed. Plaintiffs filed suit seeking damages and injunctive relief. The DOTD filed an Exception of Prescription. Plaintiffs argued that LSA-R.S. 13:5111 applied and that the suit was timely. The court in Gaharan held that the improvements to the highway did not constitute a taking by appropriation or otherwise. The court went on to hold that the applicable prescriptive period was two years under LSA-R.S. 9:5624, stating,
whenever private property is damaged for public purposes, i.e., when a public body going about public business is the damage-causing neighbor, the applicable prescription is two years as provided by LSA-R.S. 9:5624. Gaharan v. State Through Dept. of Transp. and Development, at 1012.
*237 The plaintiff in Gaharan, as does the plaintiff in this case, argues that LSA-R.S. 13:5111 and its three year prescriptive period should apply. The 3rd Circuit rejected that argument and drew a distinction between damage caused by permanent flooding, which would amount to an appropriation, and damages caused by occasional flooding, which did not constitute a taking, but did give rise to an action for damages pursuant to LSA-R.S. 9:5624. See also Hawthorne v. La. Dept. of Public Works, 540 So.2d 1261 (La.App. 3rd Cir. 1989), writ denied, 544 So.2d 406 (La.1989).
LSA-R.S. 9:5624 is applicable to those cases where the damage to private property was a necessary consequence of the construction work incidental to a public purpose and not to those damages that result exclusively from the negligent acts or omissions of the principal, its agents, or employees that caused the damage. Roberts v. Murphy Oil Corp., 577 So.2d 308, 310 (La.App. 4 Cir.1991).
In this case like Gaharan, the plaintiff's property incurs occasional flooding due to high rains and poor drainage. The plaintiff contends that the levee maintenance and construction after Hurricane Juan between 1986-88 seriously affected drainage on his property. Plaintiff filed suit in February 1989; therefore, the plaintiff's suit would be timely under LSA-R.S. 9:5624 if it was filed within two years of when the levee causing damage to his property was completed and accepted.
Plaintiff's original petition alleges as of the date the petition was filed, "The West Jefferson Levee District is still in the process of completing construction of the levee." Also, the petition refers to the levee in front of the adjacent property, which connects to the levee in front of the Westwego Airport. Plaintiff alleges that, "the levee now acts as a trap for water and causes severe flooding on the properties any time there is a strong southerly wind." Plaintiff's Second Supplemental and Amending Petition adds a paragraph clarifying the claim for flooding caused by levee work on adjacent property. The language in the original petition was broad enough to put defendant, WJLD, on notice of plaintiff's claim for flood damages caused by levee work on adjacent property. Louisiana Code of Civil Procedure Article 1153 provides:
When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original petition, the amendment relates back to the date of filing the original pleading.
We find that plaintiff's second amended complaint, which makes specific reference to the levee project to the east and west, relates back to the first complaint since WJLD was clearly put on notice of plaintiff's claim for flood damage due to levee construction and maintenance in the first petition.
We recognize that plaintiff's property has always been outside the flood protection levee and that there are serious questions of fact concerning whether flooding after 1986 was due to geographical and weather conditions beyond the control of the WJLD. However, regarding prescription, LSA-R.S. 9:5624 creates a cause of action for damages caused by public works, and allows aggrieved parties to file claims within two years of the completion and acceptance of those public projects. In order to determine if plaintiff's claim under LSA-R.S. 9:5624 has prescribed, the completion and acceptance dates on each of the levee projects must be determined.
In light of the foregoing, the trial court's ruling that the plaintiff's claim as to WJLD had prescribed is reversed and the *238 matter is remanded for further proceedings.

ASSIGNMENTS OF ERROR TWO AND THREE
Elmer filed his original petition alleging damage due to flooding in 1989. Nine (9) years later, in this Third Supplemental and Amending Petition, filed November 17, 1998, the City of Westwego and Parish of Jefferson were named as defendants based upon the closing of the drainage culvert and performance of maintenance and construction on the levee, which allegedly created joint liability with WJLD.
Plaintiff alleges that the trial court erred in granting Jefferson Parish's and the City of Westwego's Motions for Summary Judgment and Exceptions of Prescription. The District Court held that there was no joint liability between WJLD, the City of Westwego, and Jefferson Parish for the maintenance and construction of levees. Consequently, the Third Supplemental and Amending Petition adding claims against the City and Parish as defendants in 1998 did not relate back to the filing of the original petition. The trial court found that the claims set forth in the Third Supplemental Petition against the City and Parish standing on their own had prescribed.
Elmer contends that Jefferson Parish and the City of Westwego were involved in a joint venture with WJLD for the construction of a levee from 1986 until 1988. Plaintiff/Appellant relies on the deposition of Peter J. Russo and his report to the Parish Council entitled "Westwego LeveePhase I Improvements," which plaintiff claims creates a question of fact as to whether or not the Parish of Jefferson and the City of Westwego were involved in a joint venture concerning levee improvements. The trial court rejected plaintiff's joint venture theory finding that the legal responsibility for levee construction and maintenance belong to WJLD and not the City or Parish.
LSA-C.C.P. art. 1153 allows amendments to pleadings to relate back to the date of filing of the original pleading when the action or defenses asserted in the amended petition arise out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. The Supreme Court has established four requirements to determine whether Article 1153 allows an amendment that changes the identity of the parties sued to relate back to the date of the filing of the original petition. See Ray v. Alexandria Mall, Through St. Paul Property & Liability Ins., 434 So.2d 1083 (La.1983). The amended claim must arise out of the same transaction or occurrence set forth in the original pleading; the substitute defendant must have received notice of the institution of the action; the defendant must know or should have known that the action would have been brought against him; and the defendant must not be a wholly new or unrelated defendant. Although these criteria relate to amendments that change a party, they have properly been held to sanction the relation back of amendments that add or drop parties, as well. Giroir v. South Louisiana Medical Center, Div. Of Hospitals, 475 So.2d 1040, 1043 (La.1985).
There is no evidence in the record that Jefferson Parish or the City of Westwego were given notice of Elmer's original petition. Since neither the Parish nor the City were properly placed on notice of Elmer's original petition, the only way the Third and Supplemental Petition relates back to the original petition is if the Parish and the City are joint obligors with the WJLD.
Under Civil Code Article 1793, a suit against one solidary debtor interrupts *239 prescription with regard to all solidary obligors. There must be a sufficient allegation of solidarity to defeat prescription and allegations of joint liability alone are not enough. Powell v. Metropolitan Life Ins. Co., 97-1789 (La.App. 4th Cir.11/5/97), 702 So.2d 358.
Under Louisiana statutory law, specifically, LSA-R.S. 38:281(1), 301 through 308, the WJLD is given both the authority and the responsibility to build and maintain public levees. The construction and maintenance of the levees in question was the legal responsibility of WJLD after May 26, 1983 when WJLD assumed full responsibility for the Westwego Levee. LSA-R.S. 38:301 clearly indicates that the levee board is responsible for compensation to private property owners for the fair market value of property taken or destroyed for flood protection purposes. The methodology for valuation and payment to those property owners is also set forth in LSA-R.S. 38:301. The statutory scheme does not suggest that the legal responsibility be shared by other public entities.
Mr. Russo testified in his deposition that WJLD had authority over the levees. Mr. Russo stated that, since WJLD did not have the equipment to deal with the emergency situation immediately after the levee failures caused by Hurricane Juan, the Parish in conjunction with WJLD rebuilt the Westwego levee. LSA-R.S. 38:306(c) allows public entities, such as the Parish, the right at their discretion to assist or participate in the construction or maintenance of levees. Participation in levee improvements does not automatically create a joint obligation for damages.
LSA-R.S. 38:301 C(1)(a) states, "All lands ... taken, used, damaged, or destroyed for levee or levee drainage purposes shall be paid at fair market value to the full extent of the loss." Subsection C(2) of LSA-R.S. 38:301 requires that the amount of compensation due to the owners shall be paid from funds appropriated by the legislature by the office of public works of the Department of Transportation and Development. The statute requires, "The levee board shall immediately notify the office of public works of the estimate of the amount of compensation due to the owner."
This Court has reviewed a number of law suits stemming from the levee improvement on the Westbank of Jefferson Parish after Hurricane Juan. See West Jefferson Levee District v. Mayronne, 595 So.2d 672 (La.App. 5th Cir.1992), Winesberry v. Board of Commissioners of West Jefferson Levee District, 620 So.2d 385 (La.App. 5th Cir.1993), and West Jefferson Levee District v. Coast Quality Construction Corp., 620 So.2d 319 (La.App. 5th Cir.1993). We are guided in our consideration of this case by these prior decisions. Plaintiff's claim that the improvements to the levee system between 1986 and 1988 caused his property to lose value is the type of claim anticipated by LSA-R.S 38:301. Jefferson Parish's assistance in building the levee does not alter the statutory scheme as set forth in LSA-R.S. 38:301 et seq., whereby the legal responsibility for levee construction and maintenance and any resulting damages are the responsibility of the levee board. We agree with the trial court's legal conclusion that the legal obligation for damages caused by the construction or maintenance of a levee in this case is attributed to WJLD pursuant to LSA-R.S. 38:301 et seq.
Having concluded that Jefferson Parish and the City of Westwego do not share joint legal responsibilities with the WJLD for levee construction and maintenance, we must review the Third Supplemental and Amended Petition to determine if the *240 claims asserted against them standing alone have prescribed. At no time in the Third Supplemental and Amending Petition does Elmer allege that the City of Westwego participated in the levee construction. Elmer's claim against the City focuses on a thirty (30") inch drainage culvert. Elmer asserts in his Third Supplemental and Amended Petition that the City of Westwego created and/or allowed to exist a thirty (30") inch culvert for the distribution of excess water. In his appellant brief he states:
.. a 30" culvert was located on the front of the property which assisted in the drainage of the property. This culvert existed for over 30 years prior to 1986 ... It served to enhance the drainage across the front of the property that occurred without blockage except during the hurricane of October 1985 when the front of the property was sand bagged for Hurricane Juan.
He alleges that the WJLD, the Parish of Jefferson, and the City of Westwego on repeated occasions attempted to stop up the culvert in addition to performing maintenance on the levee.
The closing of the culvert is an occurrence beyond those alleged in Elmer's original petition. In the original Petition, the plaintiff alleged that the construction of the levee by the WJLD had caused his property to sustain damage due to the flooding the levee caused. In his Third Supplemental Petition, he claims he first learned during the deposition of Ernest Tassin on August 25, 1998, that eight (8) or ten (10) times while he was an Alderman and/or Mayor for the City of Westwego, Mr. Tassin ordered the culvert closed. Elmer asserts the closing of the culvert increased flooding on his property for which the City is liable.
The trial judge granted the City of Westwego's Exception of Prescription rejecting Elmer's claim that he didn't know of the City of Westwego's involvement with the culvert until Mayor Tassin's deposition in 1998. In the trial court's Reasons for Judgment, she stated that the evidence produced through depositions indicated that Elmer knew of the closing of the culvert, at the latest, in 1991.
The prescriptive period for actions taken by the City and/or Parish in closing the culvert began to run at least as far back as Hurricane Juan in 1985 and at the latest in 1991 when the culvert was permanently closed. Elmer acknowledged that the City would close the culvert each time the levee was sandbagged and upon his opening of the culvert he would be threatened with serving time in jail. We find that the record contains sufficient factual evidence to support the trial court's finding that Mr. Elmer had knowledge that the thirty (30") inch culvert was closed when weather conditions demanded it, and that any claim for the City or Parish's actions in closing the culvert prescribed prior to the filing of this Third Supplemental Petition.
The trial court correctly concluded that the Parish of Jefferson and the City of Westwego did not share joint legal responsibility for levee construction and maintenance with the WJLD. Likewise, the record supports a finding that the Elmer's claim against Jefferson Parish for any independent actions it took during the levee construction between 1986 and 1988 has prescribed. Parish trucks and employees did work on the levee in front of and adjacent to Elmer's property. The Parish's involvement was common knowledge known to everyone. Utilizing the two year prescriptive period of LSA-R.S. 9:5624, the trial court correctly ruled that Elmer's independent claims against the Parish and the City have prescribed since he alleges wrongful conduct and resulting damages *241 beginning in 1986 through 1989, and these claims were not asserted against the Parish and City until November 17, 1998.

CONCLUSION
The trial court judgment granting the defendant, WJLD's, Exceptions of Prescription is reversed. This matter is remanded to the trial court to determine the completion and acceptance dates on each of the levee projects in order to determine whether the plaintiff's action against WJLD has prescribed under LSA-R.S. 9:5624.
The trial court judgment granting Exceptions of Prescription in favor of the City of Westwego and the Parish of Jefferson is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

REHEARING GRANTED
Essex contends that, when the trial court granted West Jefferson Levee District (WJLD)'s Exception of Prescription and dismissed Charles Elmer's claims, Essex's Third Party Demand was also dismissed by the trial court for the same reasons. On rehearing, Essex claims that the opinion rendered by this court in this matter was silent as to the dismissal of their third party demand on WJLD.
Plaintiff, Charles Elmer, filed suit on February 2, 1989, for damages to his properly allegedly caused by WJLD's construction of a levee on his property. Also, on May 24, 1991, a separate suit, Yates, et al v, Charles Elmer, et al, No. 17-594, 24th Judicial District Court, was filed by several tenants against Elmer and his liability insurer for flood damages to mobile homes located on Elmer's property, which occurred in April of 1991. On August 24, 1998, Elmer filed a Motion to Consolidate the two suits. The suits were consolidated by the trial court on April 16, 1999.
Essex settled the claims with the individual plaintiffs in Yates, et al v. Elmer, et al, and on February 9, 1994, Essex filed a Third Party Demand against WJLD reserving their right of contribution and indemnification. In the Third Party Demand, Essex contended that WJLD was liable to them for any and all amounts owed because of flooding caused by a levee constructed by WJLD. The City of Westwego and Jefferson Parish were not named in the Third Party Demand, and there is nothing in the record showing an Amended Third Party Demand adding them.
In this consolidated case, the trial court granted WJLD's Exception of Prescription and also ruled as to Essex stating:
With regard to the claim filed by the third party, but in essence a claim for subrogation filed by Mr. Elmer having to do with the case, the Yates v. Elmer case, basically the same theory applies.
The complaint is of the original taking, the complaint in this regard is that the original taking caused flooding on the trailer park in 1991, and that must have been another May flood, and that claim is likewise prescribed, because the complaint is of the same damage done with regard to the same allegations of raising a new levee.
In this case, the rehearing is granted to supplement the original opinion to clarify that the Exception of Prescription granted by the trial court dismissing Essex's Third Party Demand against WJLD is reversed and the matter remanded for the reasons set forth in the original opinion concerning Elmer's claim against WJLD.